JOSEPH PLISKY, PLAINTIFF-APPELLEE, v. LEHIGH VAL-
LEY RAILROAD COMPANY, A CORPORATION, DEFEND-
ANT-APPELLANT.

Submitted October 4, 1938—Decided February 21, 1939.

Before BROGAN, CHIEF JUSTICE, and Justices BODINE and
HEHER.

For the plaintiff-appellee, *Alex Simpson.*

For the defendant-appellant, *Collins & Corbin* (*Edward A. Markley* and *Charles W. Broadhurst,* of counsel).

BROGAN, CHIEF JUSTICE. The defendant appeals from a judgment recovered by the plaintiff for personal injuries. The case came to us on briefs and in the brief of the appellant the main argument is that the trial court fell into error by refusing to grant defendant motion for nonsuit and for direction of verdict. The basis of each motion was that there was no negligence proved on the part of the defendant; that as a matter of law the plaintiff was guilty of contributory negligence and, finally, that the plaintiff had assumed the risk of the injury.

Spencer & Son, Inc., of which company plaintiff was an employe, was engaged in the work of mooring barges for the defendant, Lehigh Valley Railroad Company, at the "Black Tom" pier in Jersey City, and the plaintiff was engaged in this task at the time of his injury. The particular grain barge about to be brought up to the pier at the time was ten barge lengths away and the mooring was accomplished by means of a three hundred foot line, two or three inches thick, attached to the pier and which, through the agency of an electrically controlled winch, brought in the barge. The barge captain, an employe of the defendant, on this occasion, took one end of the three hundred foot line called a "steam" line, to the barge off shore and found the line to be not long enough to reach the center cleat of the barge to which he wished to fasten it. He called to the plaintiff that the line wouldn't reach to the center cleat and the plaintiff told him to tie it to the bow cleat. It was long enough for that. Instead the captain added another rope to the steam line by knotting it to the looped end or the "eye" of the steam line. That he had done so was not known to the plaintiff, nor could the plaintiff on the dock see that any such change had been made at the time it was made. After the ropes were tied in this fashion, the barge captain, having fastened the end of the

attached rope to the center cleat of the barge, gave the plaintiff the signal to start the winch in motion, which was done. The plaintiff's duty was to stand at the winch and, as the rope coiled around this spool-shaped mechanism, "take the line away from the winch" according to the rate at which the rope was winding around it so that the balance of the line, when reached, would have room to be wound around the spool. Plaintiff didn't notice that the steam line had a rope tied to the "eye" or loop until it was about thirty feet from the dock and when the "eye" of the steam line reached the winch the knot or the loose end of the rope tied thereto caught up his hand and took off two of his fingers and part of another.

It is conceded that it was the plaintiff's job to uncoil the line at the top of the winch in order to accommodate the balance of the line as it came onto the spool. It is difficult at times to follow the plaintiff's testimony. He is a foreigner and spoke through an interpreter, but from a careful perusal of the evidence we gather that the jury inferred, as it legitimately might, that when the "eye" of the steam line was about to coil around the winch, the plaintiff being busy removing the rope from the top thereof (the spool was about fourteen inches high), the knot, which the testimony indicates was as large as a man's two fists, turned or slipped toward the top of the spool where the plaintiff's hand at that moment was engaged, with enough force to knock off his fingers.

With that state of proof before the learned trial judge, was it error to reject motions for nonsuit or directed verdict? We do not think it was although the case strikes us as a close one. The court submitted the case to the jury on the sole issue of whether it was negligence for the defendant to have "furnished an improper or unfit instrumentality in the knotted rope." And the plaintiff said, it will be recalled, that he didn't know the line had been lengthened by the added rope. It seems to us that the jury might properly infer that the plaintiff was totally unprepared for the condition made by the additional length of rope that was knotted to the steam line since the plaintiff had said to the captain of the barge that the line was long enough to reach the bow cleat, which manifestly it was.

The argument made for the appellant proceeds upon the premise that the accident happened because the plaintiff put his hand down to take hold of the loose end of the added rope and that his hand was caught for that reason. This, we think, is contrary to fact for as we read the testimony, the plaintiff, at least twice, denied that he reached down to get hold of this loose end. This testimony was sufficient to send the question of plaintiff's alleged contributory negligence to the jury. Nor do we think that the plaintiff, as a matter of law, can be said to have assumed the risk of the injury he suffered. Assuming that the defense of assumption of risk is available to this defendant, it is not clear that the plaintiff perceived the danger that might be present because of the condition of the steam line, to the eye of which another rope was fastened by a large knot. On the contrary, the testimony negatives the idea that the plaintiff saw or appreciated the presence of any risk of the accident or that by the exercise of ordinary care he should have perceived it. The issue was one of fact.

The defendant offered no defense save the testimony of one witness, an investigator, to whom it is alleged the plaintiff gave an unsigned statement which recited that plaintiff reached down to take hold of this loose end of rope as it came near the winch and that he held it up near the middle of the spool to prevent the line from "fouling" the winch. The plaintiff did not deny that if in fact a piece of line got caught underneath the winch it would "foul" it, but he did not admit that he made such a statement to the investigator. Under all the circumstances, the questions of defendant's negligence and whether plaintiff was guilty of contributory negligence and assumption of risk were for the jury.

The remaining points on which a reversal is sought are based upon certain requests to charge which were offered to the trial judge and which he rejected. We have carefully read the requests to charge and the charge of the court, and have contrasted them. We do not think that it is open to dispute but that the court, in a clear, precise and comprehensive manner, covered each and every legal principle embodied in the requests submitted. And, of course, since

the subject-matter of the requests was adequately presented by the trial court to the jury, there was no duty on the court to adopt or use the language of the requests submitted by counsel.

The judgment will be affirmed, with costs.